**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)**

_____
                                                           )
**GEORGE PEREZ,**                          )
4507 Neptune Drive                         )
Alexandria, VA 22309,                     )
                                                           )
     Plaintiff,                         )     Civil Action No. _____
                                                           )
     v.                                       )
                                                           )
**Jovita Carranza, Administrator,**   )
**United States Small Business Administration**   )     **Jury Demanded**
409 Third Street, SW, Suite 6400    )
Washington, DC 20416,                 )
                                                           )
Serve: William P. Barr,                    )
Attorney General for the United States   )
c/o Designated Representative       )
United States Department of Justice )
950 Pennsylvania Avenue, N.W.    )
Washington, D.C. 20530-0001       )
                                                           )
Serve: Michael P. Sherwin,             )
Acting US Attorney for the District of Columbia   )
c/o Designated Representative       )
United States Attorney's Office        )
555 Fourth Street, N.W.                   )
Washington. D.C. 20530                 )
                                                           **)**
     Defendant.                        **)**
_____**)**

## COMPLAINT

**COMES NOW** Plaintiff, George Perez (hereinafter "Plaintiff" or "Mr. Perez"), by and through his undersigned counsel, and sues Jovita Carranza, Administrator, of the United States Small Business Administration (hereinafter "SBA" or "Defendant") in her official capacity, and for cause of action states, as follows:

**NATURE OF THE CASE**

1. Plaintiff George Perez (hereinafter "Plaintiff" or "Mr. Perez") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981a for relief from Defendant's unlawful discrimination of Mr. Perez on the bases of his race (Hispanic), his engagement in protected EEO activity, and being subjected to a hostile work environment during the course of his employment with the Small Business Administration (SBA).

2. Defendant SBA, a federal agency, discriminated against Plaintiff on the basis of his race (Hispanic), engagement of protected EEO activity, and subjected him to a hostile work environment during the relevant time period.

**PARTIES**

3. Plaintiff is currently domiciled at 4507 Neptune Drive, Alexandria, VA 22309. Plaintiff is a resident of the State of Virginia and a United States citizen. At all relevant times, Plaintiff was an employee of the SBA.

4. Defendant Administrator Jovita Carranza ("Defendant" or "Administrator Carranza") is being sued in her official capacity as the Administrator of the United States Small Business Administration.

5. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

## JURISDICTION

6. This Honorable Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under the Constitution, laws, or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

7. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

## VENUE

8. Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of the Defendant, an Agency of the federal government that operates within the District of Columbia, and which occurred in the District of Columbia. 28 U.S.C. § 1391. Venue is further proper in this district because there is no other district in which this action may otherwise be brought. *Id*.

## EXHAUSTION OF REMEDIES

9. Plaintiff has exhausted all of his administrative remedies.

10. On or around September 14, 2016, Plaintiff timely contacted the Agency's EEO office and filed an informal EEO complaint with the Agency's EEO office. *See* Agency Case No. 09-16-052.

11. On or around December 12, 2016, Plaintiff timely filed a formal EEO complaint with the Agency's EEO office, which was investigated by the Agency. *See* Agency Case No. 09-16-052.

12. After the investigation of his EEO complaint, Plaintiff timely requested a Hearing before the United States Equal Employment Opportunity Commission ("EEOC"). *See* EEOC No. 570 – 2017 – 01480X.

13. On January 7, 2020, the Administrative Judge remanded the case to the Agency for a Final Agency Decision (FAD).

14. On or around March 11, 2020, the Agency e-mailed Plaintiff's Final Agency Decision to him, which provided him with 90 days from receipt of the final decision to file his lawsuit.

15. Plaintiff hereby timely filed his action within 90 days after receipt of the Final Agency Decision.

**FACTS**

16. Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

17. At all times relevant to the claims made herein, Plaintiff was an employee of the Small Business Administration, in the Office of Chief Information Officer, Division of Information Security, Washington, D.C.

18. Mr. Perez is currently an IT Specialist, GS-13, Office of the Chief Information Officer (OCIO).

19. At times relevant to the complaint; however, he was a Branch Chief, GS-14, a position he assumed in September 2015 and held until his August 2016 demotion.

20. His salary and pay decreased as a result of the demotion.

21. Ja-Nelle DeVore, who left the Agency shortly thereafter, initially hired Mr. Perez.

22. Mr. Perez's role as Branch Chief at the Agency included leading the designated cyber security team, attending to any cyber security related incidents and reacting appropriately to mitigate cyber-attacks and their consequences to the Agency.

23. As Branch Chief, the cyber security team who reported to Mr. Perez included Michael Graver (federal employee), Troy Thompson (federal employee) and any contractors in the Security Operations Center (SOC) at the time.

24. At the time, there were approximately ten (10) contractors on Mr. Perez's team for whose performance he was directly responsible.

25. Keith Bluestein (Caucasian), SES Chief Information Officer for SBA, was Mr. Perez's acting supervisor.

26. As Bluestein was the Acting CIO and Acting Chief Information Security Officer ("CISO"), but his official title was Deputy CIO, and Mr. Perez did not have a second-line supervisor at the time.

27. Bluestein was aware of Mr. Perez's Hispanic race as his last name is Perez and is the "third most common and oldest Spanish names in this world." In addition, on numerous occasions, Bluestein overheard Mr. Perez speaking in Spanish with other people.

28. Repeatedly while Bluestein was Mr. Perez's direct supervisor, Bluestein would not respect Mr. Perez's expressed opinions, or the feelings Mr. Perez had towards certain issues or concerns at work.

29. Mr. Perez was aware that Bluestein would take the opinions and advice given by identified Caucasian employees under his Command, but not accept such information from a person belonging to a minority race.

30. One specific instance identified by Mr. Perez was in the suggestion given to Bluestein to report the results of a penetration test conducted by a third-party on the Agency's security system.

31. Mr. Perez wanted Bluestein to report the penetration system testing and the failed system firewall.

32. Bluestein did not present the finding to the Agency Administrator until another employee, Caucasian, brought the results of the penetration test to Bluestein and suggested Bluestein alert the Agency to the breach.

33. In another instance, Mr. Perez was leaving Bluestein's office and Bluestein made a comment in response to information Mr. Perez gave to him.

34. At that time, Bluestein stated something like or similar to: "you people are always, you know, creating issues."

35. Additionally, Bluestein made a comment to Mr. Perez to the effect of "you people" are constantly doing things like that, or "you people and your handshakes."

36. These comments often came after Mr. Perez presented an idea or provided advice for protective security measures, and effectively served to dismiss Mr. Perez's proposals.

37. Bluestein did not give Mr. Perez a performance evaluation until August 2016, which was right before Bluestein left the Agency to work at NASA.

38. Mr. Perez does not have any documentation, other than that which was received in relation to his probation report and demotion, of a performance evaluation by Bluestein for or at any grade level. There is no such performance evaluation in Mr. Perez's electronic personnel file.

39. Mr. Perez' FY 2015 performance appraisal rated Mr. Perez as "Exceeds Expectations" on the Talent Management Center (TMC) program and is signed by Jeffrey Jackson and Bluestein.

40. In or around the last quarter of 2015, Mr. Perez was approved by Bluestein to take the Senior Executive Service (SES) course.

41. To be eligible to qualify for the course, an employee must be a GS-14.

42. Further, to become an SES, an employee must have experience at the GS-15 level.

43. On or about February 10, 2016, Bluestein alerted Mr. Perez to a cyber security incident.

44. Bluestein had originally notified Mr. Perez of a virus incident at the SBA around 10:00 or 11:00 PM.

45. Per his initial training with DeVore, Mr. Perez's understanding of the correct course of action was to go to the site of the SBA to help solve the problem.

46. As Bluestein had made him aware of the incident and had not changed protocol standing since DeVore's departure, Mr. Perez was under the impression this remained the correct course of actions.

47. Mr. Perez was heading to the worksite, he received a call from the lead contractor on another contractor, Zeneth, Kenneth Towne, who expressed concerns for his safety, specifically naming the 1901 Group contactors.

48. Mr. Perez attempted to reach Bluestein to make him aware of the new incident surrounding Towne.

49. Due to a commotion on the phone, Mr. Perez felt he needed to assist Towne and ensure his safety.

50. The 1901 Group was not on contract with SBA nor did any of the contractors Mr. Perez was responsible for had a duty to monitor the performance of the associated contractors as they were a part of the network operations side.

51. When arriving on site, Mr. Perez recalled that he did not address anyone in the Network Operations Center nor did he let the SOC Team Lead speak to them either about anything other than the incident.

52. Mr. Perez stated his purpose arriving at the site was to defuse whatever was going on and had previously made several attempts to call Mr. Bluestein during this time period, but was not able to get Bluestein on the phone.

53. Mr. Perez did what he needed to do to defuse the situation and resolve the security incident.

54. Mr. Perez spoke to Bluestein about the incident early in the morning once Bluestein arrived at work.

55. Bluestein said to Mr. Perez something to the effect of "well there is nothing we can do about it now" and did not do anything further.

56. Bluestein described Mr. Perez as a "hurdle to a process of being able to get things done."

57. From February 11, 2016 through August 16, 2016, Mr. Perez was involuntarily placed on a detail and removed from his supervisory duties, which included the ability to govern and manage the cyber security team.

58. Management did not provide Mr. Perez with any reason for the detail nor did anyone explain this detail and removal from supervisory duties for the entire duration of the detail.

59. Bluestein alleged, without speaking to Mr. Perez during or after the "incident," that Mr. Perez had created the situation with the contractors in charge of a specific contractor, the 1901 Group, wherein Bluestein felt he needed "to get rid of everyone on staff" or just demote Mr. Perez.

60. Bluestein further alleges, without documentary evidence, that Mr. Perez had been counseled on his behavior previously on "many occasions."  This was untrue.

61. Bluestein contacted Miriha Furedi, Labor Relations, to discuss removing Mr. Perez from his supervisory role and duties.

62. Furedi is the identified by Bluestein as having been directly involved in the decision to issue Mr. Perez his performance evaluation, the probation report, to remove Mr. Perez from his supervisory duties and involuntarily detail him before ultimately demoting Mr. Perez, all without explanation.

63. Mr. Perez has never received any other reprimands before or after this one dated incident.

64. A Caucasian Supervisor who had similar interactions with Bluestein on a regular basis, but did not have her supervisory duties removed, included, but was not limited to, Kathleen Tindal, Director of Network Operations.

65. On or about August 16, 2016, Mr. Perez was officially demoted from his position as Branch Chief.

66. On or about the same day, Bluestein issued Mr. Perez a probation report.

67. After Mr. Perez was demoted, a Caucasian Male was hired to fulfill Mr. Perez's former position as Branch Chief and was hired at a higher grade than Mr. Perez, formerly a GS-14.

68. The newly hired Branch Chief was hired as a GS-15, step 10.

69. On August 29, 2015, Mr. Perez sent an e-mail to Miriha Furedi, Labor Relations, to schedule an appointment to express his concerns about being subjected to discrimination and harassment based on his race.

70. Mr. Perez never received a response.

71. Mr. Perez was told by Bluestein that his probation and demotion from supervisor was because of his "performance."

72. However, Mr. Perez expressed concern with this rationale, because Bluestein had previously failed to provide Mr. Perez with a performance evaluation.

73. Mr. Perez's accomplishments and self-assessment that Mr. Perez had written in for the performance year were repeatedly deleted in the TMC program (the official performance record).

74. Mr. Perez followed this verbal expression of concern with emails expressing his concerns and had previously brought up his concerns to Bluestein about Mr. Perez's accomplishments being removed from the system.

75. Specifically, Mr. Perez had emailed Bluestein on September 30, 2016, courtesy copy to HR4U, about Mr. Perez's receipt of alerts from the TMC program notifying Mr. Perez of deleted comments from his performance evaluation document and his inability to reenter comments into the system.

76. As a "precaution," Mr. Perez sent the answers to Bluestein *via* e-mail in anticipation of the problem continuing.

77. On September 30, 2016, Mr. Perez sent the same e-mail to Joe Loddo, Chief Operating Officer, expressing his concerns about his poor performance rating and the fact that Mr. Perez's accomplishments kept being removed from the TMC program.

78. On or about August 17, 2016, Mr. Perez was issued a lower than deserved performance rating by Bluestein, which was used in the rationale for his ultimate demotion.

79. This was approximately two and a half (2 ½) weeks before the probationary period for Mr. Perez's supervisory role would have ended.

80. Bluestein has stated that he could not recall when Mr. Perez was promoted initially to the GS-14 supervisory position, but knew that Mr. Perez's one-year probationary period was ending soon.

81. The "driving factor" for Bluestein to issue Mr. Perez the probation report and low performance rating on August 17th was to demonstrate that Mr. Perez could not perform in the capacity of a supervisor and additionally to return Mr. Perez to his previous grade.

82. Mr. Perez's performance as a supervisor at the GS-14 level enabled him to take training for the Senior Executive Service. This acceptance to take the training is generally not taken lightly and is based on work ethic and supervisory accomplishments, leadership qualities and dedication to service. Mr. Perez received a certificate for his successful completion of the training.

## CAUSES OF ACTION

### COUNT ONE
### (Discrimination on the Basis of Race)

83. Mr. Perez incorporates all information and allegations contained in the preceding paragraphs as if fully set forth, herein.

84. As a Hispanic, Plaintiff is a member of a protected class.

85. Because of his race (Hispanic), Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint, including but not limited to, management's failure to provide

Mr. Perez with a performance assessment; management's removal of Mr. Perez's supervisory duties; management issuance to Mr. Perez a "Probation Report;" management's providing Mr. Perez a lowered performance rating; and demotion of Mr. Perez from his supervisory position, all in violation of Title VII.

86. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment since he had a significant change in his duties and responsibilities, and consequent abilities to compete for higher grades and promotions.

87. Defendant knew that Plaintiff is Hispanic prior to subjecting Plaintiff to the aforementioned material adverse employment actions and was aware of the discrimination to which Plaintiff was subjected because of his race (Hispanic).

88. Plaintiff has been treated differently and subjected to different terms and conditions of his employment due to his race (Hispanic).

89. Defendant has limited, segregated, and classified Plaintiff in a way that deprived his of employment opportunities and otherwise adversely affected his status as an employee because of his race (Hispanic).

90. As stated above, other employees who were similarly situated, but members of a different class than Plaintiff, have been treated more favorably then Plaintiff in the terms and conditions of employment.

91. Plaintiff's race (Hispanic) was a determining factor in Defendant's unlawful conduct toward Plaintiff.

92. Plaintiff's race (Hispanic) was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

93. The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

94. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless, and in callous disregard of the rights of Plaintiff because of his race (Hispanic).

95. Defendant discriminated against Plaintiff because of his race (Hispanic) by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

96. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

97. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

98. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages;

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

c. Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d. Award reasonable attorneys' fees, costs, and expenses incurred for this action;

e. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

  f. Supervisory training for the supervisors at issue herein;

  g. Award equitable, declaratory, and injunctive relief; and

  h. Award such other and further relief as this Honorable Court deems just and proper.

## COUNT TWO
### (Hostile Work Environment)

99. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

100. As a result of Plaintiff's protected class (race (Hispanic) and/or engagement in protected EEO activity), Plaintiff's supervisors routinely humiliated Plaintiff and engaged in persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment in violation of Title VII.

101. Plaintiff was regularly and continually subjected to harassing conduct that is alleged throughout this Complaint, including but not limited to management's failure to provide Mr. Perez with a performance assessment; management's removal of Mr. Perez's supervisory duties; management issuance to Mr. Perez a "Probation Report;" management's providing Mr. Perez a lowered performance rating; and demotion of Mr. Perez from his supervisory position, all in violation of Title VII.

102. Plaintiff believes that he was subjected to a hostile work environment based on his race (Hispanic) and/or engagement in protected EEO activity.

103. Defendant's unlawful conduct was unwelcome.

104. Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint created a hostile and abusive work environment.

105. Plaintiff was subjected to harassment because race (Hispanic) and/or engagement in protected EEO activity, and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

106. Defendant knew or should have known of the harassment. Defendant failed to adequately investigate the harassment and took no effective, immediate or remedial action. Despite Plaintiff's complaints, the harassment continued unabated and increased over time.

107. By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

108. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

109. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

110. Plaintiff has incurred lost wages, loss of reputation, loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Award compensatory damages;

b. Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

c. Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d. Award reasonable attorneys' fees, costs, and expenses incurred for this action;

e. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

  f. Supervisory training for the supervisors at issue herein;

  g. Award equitable, declaratory, and injunctive relief; and

  h. Award such other and further relief as this Honorable Court deems just and proper.

## EQUITABLE RELIEF

111. Plaintiff incorporates by reference to, all facts, law, and/or allegations contained in the preceding paragraphs, as if fully set forth herein.

112. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendant and could result in further illegal actions on the party of Defendant, by and through its agents, servants and employees.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

  a. Order the Defendant to institute a policy and procedure to be implemented against discrimination;

  b. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

  c. Supervisory training for the supervisors at issue herein; and

  d. Award such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

113. Plaintiff demands a trial by jury on all issues set forth herein.

Dated:

June 5, 2020        Respectfully submitted,

           By: */s/ Stephanie Rapp-Tully*_____
             Stephanie Rapp-Tully (D.C. Bar 1016900)

Tully Rinckey, PLLC
2001 L Street N.W., Suite 902
Washington, DC 20036
(202) 787-1900
SRappTully@fedattorney.com

*Counsel for Plaintiff George Perez*