UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| GEORGE PEREZ, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 20-1484 (RBW) |
| ISABELLA CASILLAS GUZMAN, in her official capacity as Administrator of the United States Small Business Administration,[1] | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

The plaintiff, George Perez, an Hispanic male, asserts claims in this civil action against the defendant, Jovita Carranza, in her official capacity as the Administrator of the United States Small Business Administration, a federal agency, of discrimination based on race and the creation of a hostile work environment, both in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000(e) et seq. See Complaint ("Compl.") ¶¶ 1–2. Currently pending before the Court is the Defendant's Motion for Partial Summary Judgment and Partial Motion to Dismiss ("Def.'s Mot."), ECF No. 9. Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it must grant the defendant's partial motion to dismiss.

---

[1] Isabella Casillas Guzman is the current Administrator of the United States Small Business Administration, and she is therefore substituted for Jovita Carranza as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) Memorandum of Law in Support of Defendant's Motion for Partial Summary Judgment and Partial Motion to Dismiss ("Def.'s Mem."), ECF No. 9; (2) Defendant's Statement of Material Facts ("Def.'s Facts"), ECF No. 9-1; (3) Memorandum of Law in Support of Plaintiff's Opposition to Defendant's Motion for Partial Summary

(continued . . .)

I.     BACKGROUND

The following facts are taken from the Complaint, unless otherwise indicated. The plaintiff is an Hispanic male who is employed as an IT specialist, GS-13, by the Office of the Chief Information Officer within the Small Business Administration. See Compl. ¶ 18. During the time period relevant to this litigation, the plaintiff worked as a Branch Chief, GS-14, for the Office of the Chief Information Officer, Division of Information Security, in the Small Business Administration. See id. ¶¶ 17, 19. The plaintiff held that position from September 2015 until his demotion in August 2016. See id. ¶ 19. Keith Bluestein ("Mr. Bluestein"), a Caucasian male, was the plaintiff's acting supervisor during the times relevant to this litigation. See id. ¶ 25.

According to the plaintiff, Mr. Bluestein, as the plaintiff's supervisor, engaged in various forms of discriminatory behavior or adverse action against the plaintiff. Specifically, the plaintiff alleges that Mr. Bluestein generally "would not respect" the plaintiff's opinions, see Pl.'s Opp'n at 3, and that Mr. Bluestein would typically accept advice from Caucasian employees but would "not accept such information from a person belonging to a minority race[,]" see id. (citing Compl. ¶ 29). In one instance, Mr. Bluestein allegedly stated to the plaintiff: "you people are always, you know, creating issues", Compl. ¶ 34, and "'you people' are constantly doing things like that, or 'you people and your handshakes[,]'" id. ¶ 35. Furthermore, during the plaintiff's employment as a Branch Chief, Mr. Bluestein allegedly failed to provide the plaintiff with a performance assessment. See Compl. ¶ 37.

Eventually, in February 2016, Mr. Bluestein revoked the plaintiff's supervisory duties. See Pl.'s Opp'n at 6 (citing Compl. ¶ 57). The plaintiff identifies one Caucasian supervisor who

---

(. . . continued)
Judgment and Partial Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 10; and (4) Reply in Further Support of Defendant's Motion for Partial Summary Judgment and Partial Motion to Dismiss ("Def.'s Reply"), ECF No. 12.

2

allegedly "had similar interactions with [Mr.] Bluestein on a regular basis[] but did not have her supervisory duties removed." Compl. ¶ 64. Moreover, in August 2016, Mr. Bluestein issued the plaintiff a probation report and demoted the plaintiff to the position of an IT specialist. See Pl.'s Opp'n at 6 (citing Compl. ¶¶ 62–65). After the plaintiff's demotion, "a Caucasian Male was hired to fulfill [his] former position as Branch Chief and was hired at a higher grade than [him]." See Compl. ¶ 67. The plaintiff alleges that "management's failure to provide [him] with a performance assessment; management's removal of [his] supervisory duties; management issuance to [him] a 'Probation Report;' management's providing [him] a lowered performance rating; and [his] demotion of [ ] from his supervisory position" because of his Hispanic race amounted to unlawful conduct under Title VII. Id. ¶ 85.

On December 12, 2016, the plaintiff filed a formal Equal Employment Opportunity complaint with the Small Business Administration alleging discrimination and the creation of a hostile work environment based on his race.[3] See id. ¶ 11. The Small Business Administration investigated the plaintiff's complaint, and the plaintiff then requested a hearing before the United States Equal Employment Opportunity Commission ("EEOC"). See Compl. ¶¶ 11–12.

An EEOC administrative judge subsequently granted the Small Business Administration's Motion for Summary Judgment, see Def.'s Mot., Exhibit ("Ex.") D (EEOC Administrative Judge's January 7, 2020, Order Entering Judgment and Decision ("EEOC Decision")), and the plaintiff then filed this action within ninety days after receipt of the Small Business Administration's final decision. See Compl. ¶ 15. On October 15, 2020, the defendant

---

[3] The Complaint also contains allegations of a retaliatory hostile work environment based on "engagement in protected EEO activity." Compl. ¶ 105. However, the plaintiff did not raise a retaliatory hostile work environment claim at the administrative level and that claim is no longer part of this case. See Pl.'s Opp'n at 10 (noting that the "[p]laintiff withdraws this basis[,]" in response to the defendant's assertion that the plaintiff "did not raise a retaliatory hostile work environment claim at the administrative level"); see also Compl. ¶¶ 9–15 (neglecting to note which specific claims were raised at the administrative level).

3

filed its Motion for Partial Summary Judgment and Partial Motion to Dismiss, which is the subject of this Memorandum Opinion. See generally Def.'s Mot.

## II.     STANDARD OF REVIEW[4]

### A.     Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. In resolving a Rule 12(b)(6) motion, the Court "may consider only the facts alleged in the complaint, any documents either attached to

---

[4] In light of the plaintiff's withdrawal of the retaliatory aspect of his hostile work environment claim, the Court need not set forth the standard for summary judgment pursuant to Federal Rule of Civil Procedure 56.

4

or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## III.   ANALYSIS

The defendant seeks dismissal of the plaintiff's hostile work environment claim and the component of his discrete discrimination claim based on the alleged failure to provide an assessment of his performance.[5] See Def.'s Mem. at 1. Specifically, the defendant challenges the plausibility of the allegations that underly these claims. Id. The plaintiff responds "that his claims are timely and properly exhausted[,]" and that he "has sufficiently stated a plausible hostile work environment claim . . . and a plausible discrimination claim concerning the failure to provide [him with] a performance assessment." Pl.'s Opp'n at 1. The Court will address each of the plaintiff's claims in turn, beginning with the plaintiff's hostile work environment claim.

### A.   Hostile Work Environment

The defendant argues that the Complaint fails to plausibly plead a hostile work environment claim because "[t]here is no allegation in [the plaintiff]'s complaint showing 'discriminatory intimidation, ridicule, and insult' based on his race, such as any utterance about his race or any physical threat. Def.'s Mem. at 6 (quoting Carter v. Carson, 715 F. App'x 16, 17 (D.C. Cir. 2018)). The defendant also asserts that the plaintiff "appears to be cobbling together actions that he disliked or may have found humiliating[ t]hat do[] not suffice to state a hostile work environment claim." Id. at 7. Moreover, the defendant takes issue with the plaintiff's

---

[5] The defendant also moves for dismissal and summary judgment for the retaliatory aspect of the plaintiff's hostile work environment claim. See Def.'s Mot. at 1. However, as previously noted, the plaintiff has "withdraw[n] this basis[,]" in response to the defendant's assertion that the plaintiff failed to raise this retaliatory aspect at the administrative level. Pl.'s Opp'n at 10. Accordingly, the Court grants the defendant's motion to the extent it seeks dismissal of any claim that the plaintiff was subject to retaliation through the creation of a hostile work environment.

purported reliance on "discrete acts" and failure "to provide non-conclusory factual support for the requisite linkage between whatever allegedly hostile or harassing behavior [the plaintiff] relies upon and [the plaintiff]'s race." Id. at 8.

In response, the plaintiff argues that his Complaint "me[e]t[s] his burden in establishing a prima facie hostile work environment claim" because it "show[s] that he was subjected to intimidation, ridicule, and insult as a result of Mr. Bluestein's actions." Pl.'s Opp'n at 17. According to the plaintiff, various offensive "comments coupled with Mr. Bluestein's failure to provide [the plaintiff] with a [Fiscal Year] 2016 performance assessment, demotion[,] and issuance of a probation report created a hostile, abusive work environment." Id. at 17–18. Despite these responses, the Court ultimately agrees with the defendant that the plaintiff has failed to adequately allege a hostile work environment claim.

"A plaintiff may prevail on a hostile work environment claim if []he shows 'that [his] employer subjected [him] to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" Jackson v. Gallaudet Univ., 169 F. Supp. 3d 1, 4 (D.D.C. 2016) (quoting Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008)). "In evaluating a plaintiff's allegations, courts must consider 'all the circumstances': 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Massaquoi v. District of Columbia, 81 F. Supp. 3d 44, 52 (D.D.C. 2015) (Walton, J.) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). The "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position." Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81 (1998). "These standards for judging hostility are

sufficiently demanding to ensure that Title VII does not become a general civility code . . . [and] filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citation and quotation marks omitted).  Additionally, "[a] hostile work environment claim is 'based on the cumulative effect of individual acts,'" Jackson, 169 F. Supp. 3d at 5 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002)), and the allegedly discriminatory acts underlying a hostile work environment claim "must be adequately connected to each other (i.e., 'all acts which constitute the claim are part of the same unlawful practice') as opposed to being an array of unrelated discriminatory or retaliatory acts." Baird v. Gotbaum, 662 F.3d 1246, 1252 (D.C. Cir. 2011) (citation omitted). "Except in extreme circumstances, courts have refused to hold that one incident is so severe to constitute a hostile work environment.  Even a few isolated incidents of offensive conduct do not amount to actionable harassment." Stewart v. Evans, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (citations omitted).

> Here, the plaintiff alleges that he
>
> was regularly and continually subjected to harassing conduct that is alleged throughout [the] Complaint, including but not limited to management's failure to provide [him] with a performance assessment; management's removal of [his] supervisory duties; management issuance to [him] a 'Probation Report;' management's providing [him] a lowered performance rating; and demotion . . . from his supervisory position, all in violation of Title VII."

Compl. ¶ 101. With respect to these allegations, "[t]he plaintiff's hostile work environment claim is essentially an amalgamation of his discrimination and retaliation claims[]" that the Court is "reluctant to transform . . . into a cause of action for hostile work environment.'" Massaquoi, 81 F. Supp. 3d at 53 (quoting Wade v. District of Columbia, 780 F. Supp. 2d 1, 19 (D.D.C. 2011)); see also Nurriddin v. Bolden, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (stating that "[n]or

7

can the removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management be characterized as sufficiently intimidating or offensive in an ordinary workplace context" to constitute a hostile work environment).

The plaintiff additionally alleges that Mr. Bluestein failed to respect the plaintiff's "expressed opinions, or the feelings [the plaintiff] had towards certain issues or concerns at work," Compl. ¶ 28, and that Mr. Bluestein "would take the opinions and advice given by identified Caucasian employees under his Command, but not accept such information from a person belonging to a minority race[,]" id. ¶ 29.  In this regard, the plaintiff identifies one specific instance when Mr. Bluestein disregarded the plaintiff's suggestion to report a system failure and subsequently reported the finding after a Caucasian employee made the same suggestion.  See id. ¶ 32.  The plaintiff also alleges that Mr. Bluestein made two discriminatory comments to the plaintiff: "you people are always, you know, creating issues", id. ¶ 34, and "'you people' are constantly doing things like that, or 'you people and your handshakes[,]'" id. ¶ 35.

However, "mere reference to alleged disparate acts of discrimination against [the] plaintiff cannot be transformed, without more, into a hostile work environment." Massaquoi, 81 F. Supp. 3d at 53 (quoting Nurriddin, 674 F. Supp. 2d at 94).  Here, the plaintiff's allegations largely amount to "isolated incidents of offensive conduct," Stewart, 275 F.3d at 1134, or "mere offensive utterance[s]," Massaquoi, 81 F. Supp at 52 (quoting Harris, 510 U.S. at 23).  In alleging only a handful of instances of objectionable conduct, the plaintiff's hostile work environment claim does little to rise above "attack[ing] the ordinary tribulations of the workplace", Faragher, 524 U.S. at 788 (internal citation and quotation marks omitted) (referencing "the sporadic use of abusive language[] . . . and occasional teasing[]").  "Although

incidents of discrimination or retaliation can establish a hostile work <u>environment if connected to a pervasive pattern of severe harassment</u>, the actions alleged by the plaintiff here do not rise to that level." <u>Massaquoi</u>, 81 F. Supp. at 53 (emphasis added).  Indeed, "[i]t has long been clear in this district that isolated incidents of offensive language and even ethnic or racial slurs do not 'affect the conditions of employment to [a] sufficiently significant degree to violate Title VII.'" <u>Nagi v. Chao</u>, Civil Action No. 16-2152 (KBJ), 2018 WL 4680272, at *3 (D.D.C. Sept. 28, 2018) (quoting <u>Deloatch v. Harris Teeter, Inc.</u>, 797 F. Supp. 2d 48, 62 (D.D.C. 2011)).

Accordingly, the Court concludes that the plaintiff has failed to allege "that the defendant has engaged in a pervasive or severe pattern of harassment[,]" <u>Massaquoi</u>, 81 F. Supp. 3d at 53, sufficient to plausibly state a hostile work environment claim, and the Court must grant the defendant's motion to dismiss with respect to that claim.  Having reached this conclusion, the Court now turns to the defendant's challenge to the plaintiff's discrimination claim based on the alleged failure to provide the plaintiff a performance assessment.

**B.     Discrimination Based on the Failure to Provide a Performance Assessment**

The defendant argues that "the alleged failure to provide a performance assessment[ ] does not amount to a materially adverse employment action for the purposes of a discrimination claim." Def.'s Mem. at 11.  The defendant also contends that "[t]he [C]omplaint fails to allege any objectively tangible harm from the alleged failure to provide a performance assessment." <u>Id.</u> In opposition, the plaintiff argues that "Mr. Bluestein's failure to provide an assessment did constitute an adverse employment action [because] . . . [it] significantly impacted [the plaintiff]'s ability to be promoted to a GS-15 position[,]" and hindered the plaintiff's "path to cash awards[.]" Pl.'s Opp'n at 15.  The Court agrees with the defendant that the plaintiff has not

adequately demonstrated that the alleged failure to provide him a performance evaluation was a sufficiently adverse employment action.

"'[T]he two essential elements of a [Title VII] discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, [or] age.'" Massaquoi, 81 F. Supp. 3d at 49 (quoting Baloch, 550 F.3d at 1196). "An 'adverse employment action' is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Casey v. Mabus, 878 F. Supp. 2d 175, 183 (D.D.C. 2012) (quoting Baird v. Gotbaum, 662 F.3d 1246, 1248 (D.C. Cir. 2011)). An adverse employment action involves "'materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'" Id. (quoting Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002)). "Because adverse employment actions must be 'significant' and entail 'objectively tangible harm,' the Supreme Court has recognized that 'in most cases [adverse employment actions] inflict[] direct economic harm." Id. (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 762 (1998)). Therefore, courts have routinely limited adverse employment actions under Title VII to "'ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating . . . [and not] interlocutory or mediate decisions having no immediate effect upon employment conditions.'" Id. (quoting Taylor v. FDIC, 132 F.3d 753, 764 (D.C. Cir. 1997)). "[E]mployment actions that do not obviously cause a significant change in employment status[ ] . . . require the plaintiff to 'go the further step' of demonstrating how the decision caused objectively tangible harm." Ames v.

Nielson, 286 F. Supp. 3d 70, 83 (D.D.C. 2017) (quoting Douglas v. Donovan, 559 F.3d 549, 556 D.C. Cir. 2009)).

In his Complaint, the plaintiff alleges adverse employment actions "including but not limited to, management's failure to provide [him] with a performance assessment; management's removal of [the plaintiff]'s supervisory duties; management issuance to [the plaintiff] a "Probation Report;" management's providing [the plaintiff] a lowered performance rating; and demotion of [the plaintiff] from his supervisory position, all in violation of Title VII." See Compl. ¶ 85. The plaintiff alleges that these actions "materially affected the terms, privileges, and conditions of [the] [p]laintiff's employment since he had a significant change in his duties and responsibilities, and consequent abilities to compete for higher grades and promotions." See id. ¶ 86. Specifically, the plaintiff contends that the lack of a performance assessment contributed to the plaintiff's subsequent probation and demotion. See id. ¶¶ 71-72. The plaintiff additionally alleges that his accomplishments were repeatedly removed from the official performance record system, see id. ¶¶ 73-74, and that Mr. Bluestein subsequently issued the plaintiff a "lower than deserved performance rating . . . which was used in the rationale for his ultimate demotion[,]" id. ¶ 78. The plaintiff also alleges that Mr. Bluestein issued the probation report and low performance rating because Mr. Bluestein wanted "to demonstrate that [the plaintiff] could not perform in the capacity of a supervisor and additionally to return [the plaintiff] to his previous grade." Id. ¶ 81.

Ultimately, the Complaint's allegations do not demonstrate that the purported failure to provide a performance assessment constitutes a sufficiently adverse employment action under Title VII. "Because 'significant' and 'objectively tangible' harm is required, performance evaluations ordinarily are not actionable under Title VII." Douglas, 559 F.3d at 552. As with

the existence of a poor performance assessment, the lack of a performance assessment of any kind would "not necessarily [be an] adverse action[] and [it] should not be considered such if [it] did not affect the employee's grade or salary." Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003). Accordingly, the plaintiff "must go the further step of demonstrating how the decision [ ] caused such an objectively tangible harm." Douglas, 559 F.3d at 553. However, the plaintiff now contends, in his opposition, that the lack of an assessment "significantly impacted [his] ability to be promoted to a GS-15 position[,]" and hindered his "path to cash awards[.]" Pl.'s Opp'n at 15. Although these allegations contribute to the likelihood that the failure to provide the plaintiff with a performance assessment constituted an adverse action, see Douglas, 559 F.3d at 553 ("[S]ome actions do not obviously cause a significant change in employment status"), these bases are not alleged in the Complaint, see Wright v. U.S. Dep't of Justice, 121 F. Supp. 3d 171, 175 n.2 (D.D.C. 2015) ("[I]t is a well-established principle of law in this Circuit that a plaintiff may not amend [his] complaint by making new allegations in [an] opposition brief.") And even if they were alleged in the Complaint, the harm that might result from the lack of a performance evaluation "viewed in isolation is[,]" nonetheless, "speculative." Douglas, 559 F.3d at 556 (citing Weber v. Battista, 494 F.3d 179, 184–85 (D.C. Cir. 2007)). Therefore, at most, the allegations in the Complaint merely show that Mr. Bluestein's alleged failure to provide a performance assessment represents an interlocutory decision that did not, alone, cause the plaintiff objectively tangible harm or impaired his ability to obtain future promotional opportunities.

  Accordingly, the Court concludes that the plaintiff has failed to sufficiently plead an adverse employment action with respect to his discrimination claim for the alleged failure to provide a performance, and the Court must grant the motion to dismiss on this claim.

## IV.     CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part the defendant's motion to dismiss. The motion is granted to the extent it seeks dismissal of the plaintiff's claims based on the alleged creation of a hostile work environment and the alleged failure to provide him with a performance assessment. The motion is denied in all other respects.

**SO ORDERED** this 31st day of May, 2022.[6]

REGGIE B. WALTON<br>United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.